IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MICHAEL EVANS,                              07-CV-1532-BR

       Plaintiff,                           OPINION AND ORDER

v.

MULTNOMAH COUNTY, SHERIFF
BERNIE GUISTO, DEPUTY RICHARD
HATHAWAY, DEPUTY ROBERT
GRIFFITH, OFFICER RYAN
ALBERTSON, SERGEANT CATHLINE
GORTON, and JOHN DOES 1-3,

       Defendants.


BENJAMIN WRIGHT HAILE
620 S.W. Main Street
Suite 616
Portland, OR 97205
(503) 228-1889

      Attorney for Plaintiff


1 - OPINION AND ORDER

**AGNES SOWLE**
Multnomah County Attorney
**STEPHEN LEWIS MADKOUR**
Assistant Multnomah County Attorney
501 S.E. Hawthorne, Suite 500
Portland, OR  97214
(503) 988-3138

> Attorneys for Defendants Multnomah County, Sheriff
> Bernie Guisto, Deputy Richard Hathaway, Deputy Robert
> Griffith, and Sergeant Cathline Gorton

**LINDA MENG**
Portland City Attorney
**DAVID A. LANDRUM**
Deputy Portland City Attorney
1221 S.W. Fourth Avenue, Room 430
Portland, OR  97204
(503) 823-4047

> Attorneys for Defendant Officer Ryan Albertson

**BROWN, Judge.**

This matter comes before the Court on the Motion (#37) for Partial Summary Judgment of Deputy Richard Hathaway and Sgt. Cathline Gorton and Plaintiff Michael Evans's Cross-Motion (#42) for Partial Summary Judgment.  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion and **DENIES** Plaintiff's Motion.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

On September 11, 2006, Plaintiff was booked into Multnomah County Detention Center (MCDC).  When Plaintiff arrived for

2 - OPINION AND ORDER

booking, he was contacted by Deputy Hathaway and Deputy Robert
Griffith, who are Deputy Sheriffs for Multnomah County.  Deputies
Hathaway and Griffith began to assist in the booking process.
Deputy Hathaway searched Plaintiff and asked him to remove his
shoes and jewelry.  Deputy Griffith contends Plaintiff glared
defiantly and moved slowly during the booking process.
Plaintiff, however, alleges he fully complied with all of the
Deputies' requests.

When Deputy Hathaway asked Plaintiff to place his
fingerprints on the back of a property receipt in accordance with
MCDC booking policy, Plaintiff objected because, according to
Plaintiff, the list of property did not include his guns.
Defendants assert Plaintiff stated, "If you want my fingerprints,
you're going to have to take them."  Deputy Hathaway reached for
Plaintiff's hand and tried to move it toward an ink pad to begin
fingerprinting.  Deputy Hathaway testified in his deposition that
Plaintiff tried to pull his hand away, and Deputy Hathaway tried
to control Plaintiff's hand by pushing Plaintiff toward the
intake counter.  According to Deputy Hathaway, Plaintiff hit him
in the nose during this interaction.  Plaintiff, however, asserts
he did not hit Deputy Hathaway at any time and was physically
compliant throughout the encounter, even to the point of becoming
limp at one point to show his compliance.

It is undisputed that at some point Deputies Griffith and

3 - OPINION AND ORDER

Hathaway grabbed Plaintiff and pulled him to the ground.  Deputy Griffith testified in his deposition that he hit Plaintiff twice in the side as he was bringing Plaintiff to the ground.  Deputy Hathaway testified he gave Plaintiff several "focused blows" in an effort to get him to comply with the Deputies' orders to lay on his stomach and put his hands behind him.  According to Deputy Hathaway, he told Plaintiff to lay on his stomach and put his hands behind his back, but Plaintiff continued to "struggle[], f[ight], pull[] his arms in, pull[] them out, wiggle[], squirm[], kick[], twist[], roll[].  You name it."  Deputy Hathaway acknowledges he administered several more focused blows to Plaintiff in an effort to get him to comply.

In addition to Deputies Hathaway and Griffith, Portland Police Officer Hager also became involved in the contact with Plaintiff and tried to secure Plaintiff's legs, but she was unsuccessful.

Ultimately, Sgt. Gorton, who was stationed at her desk away from the booking area, noticed a commotion on the television monitors at her desk.  Sgt. Gorton testified in her deposition that she saw her "staff wrestling with a combative inmate on the floor."  She went to the booking area and saw Deputies Hathaway and Griffith and a Portland police officer "wrestling with a guy on the floor and telling him to give them their [*sic*] hands."  Sgt. Gorton testified the only statements she recalled Plaintiff

4 - OPINION AND ORDER

making during the struggle were "Fuck you," "I own you," and "the F word . . . frequently."  Sgt. Gordon instructed Plaintiff to "stop resisting and give us his hands."  According to Defendants, Sgt. Gorton directed another deputy to retrieve a taser from the charging cradle because Plaintiff continued to be noncompliant. The taser did not have the cartridge on it, and, therefore, it could not be used to shoot taser probes.  Nevertheless, Sgt. Gordon took the taser over to Plaintiff, bent at the waist, and informed Plaintiff that she was going to use the taser if Plaintiff did not stop resisting.  According to Defendants, Plaintiff continued to scream, curse, and yell.

Sgt. Gorton then bent down next to Plaintiff and activated the red pointer light on the taser.  With her finger on the guard, Sgt. Gorton pointed the taser light at Plaintiff and briefly shined the light in his eyes so he could see the taser was activated.  At that point, Defendants allege Plaintiff stopped resisting, and he was escorted to a separation cell.

That night, Deputy Hathaway prepared a Misconduct-Hearing Report in which he reported Plaintiff "struck [him] in the nose during booking.  A use of force occurred in the booking area. [Plaintiff] would not follow the directions given to him during booking."  The Report triggered an internal disciplinary process in MCDC that resulted in Plaintiff being subject to 20 days in "lockdown CTS" and a fee of $5.

At some point Deputy Hathaway told Officer Hager that Plaintiff hit him in the nose with his elbow, and Officer Hager cited Plaintiff for Assaulting a Police Officer.  Although Plaintiff asserts Deputy Hathaway testified as to the events of September 11, 2006, at the grand-jury proceeding in connection with the charge of Assaulting a Police Officer, Deputy Hathaway testified at deposition that he did not have any recollection of testifying before the grand jury.  Ultimately the Multnomah County District Attorney dismissed this charge because Deputy Hathaway did not appear at Plaintiff's trial.

On September 12, 2007, Plaintiff filed a Complaint in Multnomah County Circuit Court against Multnomah County, Sheriff Bernie Guisto, Deputy Hathaway, Deputy Griffith, Officer Ryan Albertson, Sgt. Gorton, and John Does 1-3 in which Plaintiff alleged claims for (1) excessive force in violation of his rights under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, (2) assault and battery under state law, (3) malicious prosecution under § 1983, and (4) failure to train and to supervise law-enforcement personnel.  Plaintiff did not allege economic damages, but he sought noneconomic damages of $60,000.

On October 12, 2007, Defendants removed the matter to this Court.

On October 1, 2008, Deputy Hathaway and Sgt. Gorton filed a Motion for Partial Summary Judgment in which Sgt. Gorton seeks

summary judgment as to Plaintiff's First and Second Claims for excessive force and assault and battery and Deputy Hathaway moves for summary judgment as to Plaintiff's Third Claim for malicious prosecution.  On that same day, Plaintiff filed a Motion for Partial Summary Judgment against Sgt. Gorton, Deputy Griffith, and Deputy Hathaway as to Plaintiff's First Claim for excessive force, against Multnomah County as to Plaintiff's Second and Third Claims for assault and battery and malicious prosecution under state law, and against Deputy Hathaway as to Plaintiff's Third Claim for malicious prosecution under § 1983.

On January 30, 2009, the Court held a hearing on the parties' Motions.  At the hearing, Plaintiff's counsel clarified Plaintiff's Third Claim for malicious prosecution was brought both under § 1983 and state law and Plaintiff's Fourth Claim was a *Monell*[1] claim against the public-body Defendant for liability as to Plaintiff's § 1983 excessive-force claims.  Finally, Plaintiff's counsel confirmed all state-law claims were brought only against the public-body Defendants and all § 1983 claims were brought against the individual Defendants in their individual capacities.  Because the Court found there were issues of material fact concerning the physical contact that Deputies Hathaway and Griffith had with Plaintiff during the booking process, the Court (1) denied Plaintiff's Motion for Partial

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Summary Judgment as to Plaintiff's First Claim against Deputies Hathaway and Griffith for excessive force under § 1983 and (2) denied Plaintiff's Motion for Partial Summary Judgment as to Plaintiff's Second Claim for assault and battery against Multnomah County arising from the actions of Deputies Hathaway and Griffith.

The Court took the following issues under advisement: (1) the parties' Motions for Partial Summary Judgment as to Plaintiff's First Claim against Sgt. Gorton for excessive force under § 1983, (2) the parties' Motions for Partial Summary Judgment as to Plaintiff's Second Claim against Multnomah County for assault and battery based on the actions of Sgt. Gorton, (3) the parties' Motions for Partial Summary Judgment as to Plaintiff's Third Claim against Deputy Hathaway for malicious prosecution under § 1983, and (4) the parties' Motions for Partial Summary Judgment as to Plaintiff's Third Claim against Multnomah County for malicious prosecution under state law.

## STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th

8 - OPINION AND ORDER

Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id*.  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense
determines whether a fact is material.  *Miller v. Glenn Miller
Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the
resolution of a factual dispute would not affect the outcome of
the claim, the court may grant summary judgment.  *Id.*


**DISCUSSION**

As noted, the remaining issues in this matter are (1) the
parties' Motions for Partial Summary Judgment as to Plaintiff's
First Claim against Sgt. Gorton for excessive force under § 1983,
(2) the parties' Motions for Partial Summary Judgment as to
Plaintiff's Second Claim against Multnomah County for assault and
battery as to the actions of Sgt. Gorton, (3) the parties'
Motions for Partial Summary Judgment as to Plaintiff's Third
Claim against Deputy Hathaway for malicious prosecution under
§ 1983, and (4) the parties' Motions for Partial Summary Judgment
as to Plaintiff's Third Claim against Multnomah County for
malicious prosecution under state law.

**I.   Plaintiff's First Claim against Sgt. Gorton for excessive
       force under § 1983.**

Plaintiff contends Sgt. Gorton used excessive force when she
shined the red pointer light of the taser in Plaintiff's eyes and
threatened to tase him.  Defendants assert Sgt. Gorton did not
use excessive force, and, in any event, she is entitled to

qualified immunity as to this claim.

**A.    Excessive force under § 1983.**

In his Complaint, Plaintiff brings his excessive-force claim pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.  In their Motion for Summary Judgment, Defendants contend the Court should apply the Fourth Amendment standard to Plaintiff's claims of excessive force pursuant to *Pierce v. Multnomah County,* 76 F.3d 1032, 1036 (9th Cir. 1996), and *Lolli v. County of Orange*, 351 F.3d 410, 412 (9th Cir. 2003).  In his Cross-Motion for Summary Judgment, Plaintiff applied the Fourth Amendment test laid out in *Graham* to his claims of excessive force.

The law that applies to claims of excessive force that arise during the booking process is unsettled.  In *Graham v. Connor*, the Supreme Court held the Fourth Amendment rather than the Due Process Clause of the Fourteenth Amendment sets the standard to apply in the context of an excessive-force claim that arises during an arrest or investigatory stop:

> *all* claims that law enforcement officers have used
> excessive force . . . in the course of an arrest,
> investigatory stop, or other "seizure" of a free
> citizen should be analyzed under the Fourth
> Amendment and its "reasonableness" standard,
> rather than under a "substantive due process"
> approach.  Because the Fourth Amendment provides
> an explicit textual source of constitutional
> protection against this sort of physically
> intrusive governmental conduct, that Amendment,
> not the more generalized notion of "substantive
> due process," must be the guide for analyzing

these claims.

490 U.S. 386, 394 (1989)(emphasis in original).  Although the
Court specifically declined to resolve "the question whether the
Fourth Amendment continues to provide individuals with protection
against the deliberate use of excessive . . . force beyond the
point at which arrest ends and pretrial detention begins" the
Court noted "[i]t is clear . . . that the Due Process Clause
protects a pretrial detainee from the use of excessive force
[and] [a]fter conviction, the Eighth Amendment 'serves as the
primary source of substantive protection.'"  *Id*. at 395 n.10.

In *Pierce,* the plaintiff was arrested, booked, and
awaiting identification in a holding cell when officers allegedly
used excessive force against her.  76 F.3d at 1036.  The Ninth
Circuit concluded the district court erred when it applied an
Eighth Amendment standard to evaluate the plaintiff's excessive-
force claims.  *Id*. at 1042.  After noting the Supreme Court left
unresolved in *Graham* the constitutional standard to apply to
individuals alleging excessive force after arrest and before
detention, the Ninth Circuit held in *Pierce* that

> the Fourth Amendment sets the applicable
> constitutional limitations on the treatment of an
> arrestee detained without a warrant up until the
> time such arrestee is released or found to be
> legally in custody based upon probable cause for
> arrest.

*Id*.

In *Gibson v. County of Washoe*, the decedent was

12 - OPINION AND ORDER

arrested, booked, and died while in pretrial detention.  290 F.3d

1175, 1182-83 (9th Cir. 2002).  In addition to due-process claims

that jailers were deliberately indifferent to decedent's medical

needs, his Estate also brought § 1983 excessive-force claims

concerning the force used against the decedent while in pretrial

custody.  After acknowledging the Supreme Court's language in

*Graham* that "[t]he Due Process clause protects pretrial detainees

from the use of excessive force that amounts to punishment," the

Ninth Circuit explained:

> Although the Supreme Court has not expressly
> decided whether the Fourth Amendment's prohibition
> on unreasonable searches and seizures continues to
> protect individuals during pretrial detention,
> id., we have determined that the Fourth Amendment
> sets the "applicable constitutional limitations"
> for considering claims of excessive force during
> pretrial detention.  *Pierce v. Multnomah County*,
> 76 F.3d 1032, 1043 (9th Cir. 1996), *cert. denied*,
> 519 U.S. 1006 (1996).  *Graham* therefore explicates
> the standards applicable to a pretrial detention
> excessive force claim in this circuit.

*Id*. at 1197.  The court then applied the Fourth Amendment

standard set out in *Graham* to the plaintiff's excessive-force

claim.  *Id*.

In *Lolli*, the plaintiff was arrested on an outstanding

warrant, booked, and placed in a holding cell where he alleged

the defendants subjected him to excessive force.  351 F.3d at

412.  The Ninth Circuit again noted "'the Fourth Amendment sets

the applicable constitutional limitations for considering claims

of excessive force during pretrial detention.'"  *Id*. (quoting

13 - OPINION AND ORDER

*Gibson*, 290 F.3d at 1197)).  Although the court did not reference *Graham*, the court "evaluate[d] [the plaintiff's] claim under [the Fourth] [A]mendment's objective reasonableness standard."  *Id*. (citing *Pierce*, 76 F.3d at 1043)).

Here Plaintiff's excessive-force claim arises from actions occurring after his warrantless arrest, during the booking process, and before a Magistrate determined there was probable cause for the initial arrest.  Consistent with the Ninth Circuit's decisions in *Pierce* and *Gibson*, the Court applies the Fourth Amendment standard to Plaintiff's § 1983 claims for excessive force.

Under *Graham* the pertinent question when assessing an excessive-force claim under the Fourth Amendment is whether the force used "was objectively reasonable 'in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation.'"  *Gregory v. County of Maui*, 523 F.3d 1103, 1106 (9th Cir. 2008)(quoting *Graham*, 490 U.S. at 397).  Determining the "reasonableness" of a particular action "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* (internal quotation marks omitted).

To determine the reasonableness of the use of force, the court first must evaluate "the type and amount of force

inflicted." *Miller v. Clark County*, 340 F.3d 959, 964 (9ᵗʰ Cir. 2003)(citation omitted).

> Second, [the Court must] assess the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *See Graham*, 490 U.S. at 396 (internal quotations omitted). Third, [the Court must] balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable. *See Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1199 (9ᵗʰ Cir. 2000)(judgment vacated and case remanded for further consideration in light of *Saucier v. Katz*, 533 U.S. 194 (2001), *by County of Humboldt v. Headwaters Forest Defense*, 534 U.S. 801 (2001)) (judgment reaffirmed after remand by *Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125, 1127 (9ᵗʰ Cir. 2002)).

*Id*. *See also* 490 U.S. at 396 (listing factors). The Ninth Circuit has also recognized

> not all of the *Graham* factors are relevant when the alleged excessive force occurs during an altercation with a pretrial detainee. *See Gibson*, 290 F.3d at 1197 & n.21; *see also Lolli v. County of Orange*, 351 F.3d 410, 415-16 & n.4 (9ᵗʰ Cir. 2003).

*Cotton v. County of Santa Barbara*, No. 06-56079, 286 Fed. Appx. 402, 406 (9ᵗʰ Cir. July 22, 2008).

In *Gibson*, the Ninth Circuit noted "[i]n the context of pretrial detention rather than arrest, it is clear that all the factors mentioned in *Graham* - whether the suspect is resisting arrest or attempting to flee, for example - will not necessarily

15 - OPINION AND ORDER

be relevant." 290 F.3d at 1197 n.21. *See also Lolli*, 351 F.3d

at 415-16 (same).  In *Cotton*, the Ninth Circuit noted

> [i]t is also clear that the *Graham* factors do not
> adequately take into consideration the govern-
> mental interests at stake when resistance occurs
> in a custodial setting.  The Supreme Court has
> recognized that "prison administrators are charged
> with the responsibility of ensuring the safety of
> the prison staff, administrative personnel, and
> visitors, as well as the 'obligation to take
> reasonable measures to guarantee the safety of the
> inmates themselves.'"  *Whitley v. Albers*, 475 U.S.
> 312, 320 (1986) (quoting *Hudson v. Palmer*, 468
> U.S. 517, 526-27 (1984)).

The ultimate question "in all cases is whether the use

of force was 'objectively reasonable in light of the facts and

circumstances confronting' the . . . officers." *Blankenhorn v.

City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007)(quoting *Graham*,

490 U.S. at 397).

   **B.   Qualified immunity**.

        Defendants contend Sgt. Gorton is entitled to qualified

immunity because the law was not so clearly established that

Sgt. Gorton was on fair notice that her threat to use the taser

in the circumstances of the encounter at issue would violate

Plaintiff's right to be free from excessive force under the

Fourth Amendment.

        "Generally officers performing discretionary duties

have qualified immunity, which shields them 'from civil damages

liability as long as their actions could reasonably have been

thought consistent with the rights they are alleged to have

16 - OPINION AND ORDER

violated.'"  *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1077
(9th Cir. 2003)(quoting *Anderson v. Creighton*, 483 U.S. 635, 638
(1987)).  "Qualified immunity shields an officer from suit when
[he] makes a decision that, even if constitutionally deficient,
reasonably misapprehends the law governing the circumstances [he]
confronted."  *Brosseau v. Haugen*, 125 S. Ct. 596, 599 (2004)
(citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

        In *Saucier v. Katz,* the Supreme Court held a court that
is evaluating a defense of qualified immunity must first
"determine whether--resolving all disputes of fact and
credibility in favor of the party asserting the injury--the facts
adduced at summary judgment show that the officer's conduct
violated a constitutional right" before the court determined
"whether, at the time of the violation, the constitutional right
was 'clearly established.'"  533 U.S. 194, 201 (2001).

        In 2009, however, the Supreme Court, held

> while the sequence set forth [in *Saucier*] is often
> appropriate, it should no longer be regarded as
> mandatory.  The judges of the district courts and
> the courts of appeals should be permitted to
> exercise their sound discretion in deciding which
> of the two prongs of the qualified immunity
> analysis should be addressed first in light of the
> circumstances in the particular case at hand.

*Pearson v. Callahan*, 129 S. Ct. 808, 812 (2009).

        In the present circumstances, this Court concludes it
is appropriate to reach the merits of Sgt. Gorton's qualified
immunity defense without resolving whether Plaintiff's

17 - OPINION AND ORDER

allegations, if true, establish a constitutional violation.
Thus, the Court considers whether at the time of Sgt. Gorton's
actions there was any clearly established prohibition from
threatening to use a taser in the manner Plaintiff alleges.

>    A right is clearly established if its "contours"
>    are sufficiently clear that a reasonable official
>    would understand that what he is doing violates
>    that right.  Even if the violated right is clearly
>    established . . . in certain situations, it may be
>    difficult for a police officer to determine how to
>    apply the relevant legal doctrine to the partic-
>    ular circumstances he or she faces.  [T]herefore,
>    . . . if an officer makes a mistake in applying
>    the relevant legal doctrine, he or she is not
>    precluded from claiming qualified immunity so long
>    as the mistake is reasonable.  That is, if the
>    officer's mistake as to what the law requires is
>    reasonable, . . . the officer is entitled to the
>    immunity defense.

*Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1060-61 (9th Cir.
2006)(quotations omitted).

    "Because the focus is on whether the officer had fair
notice that [his] conduct was unlawful, . . . [i]f the law at
[the time of the conduct] did not clearly establish that the
officer's conduct would violate the Constitution, the officer
should not be subject to liability."  *Brosseau*, 125 S. Ct. at
599.

>    The "clearly established" requirement "operates
>    'to ensure that before they are subjected to suit,
>    [government officials] are on notice their conduct
>    is unlawful.'"  *Hope v. Pelzer*, 536 U.S. 730, 739
>    (2002)(quoting *Saucier*, 533 U.S. at 206).  For a
>    constitutional right to be clearly established,
>    "its contours 'must be sufficiently clear that a
>    reasonable official would understand that what he

> is doing violates that right'" at the time of his
> conduct. *Id.* (citations omitted)(quoting *Anderson
> v. Creighton*, 483 U.S. 635, 640 (1987)). If a
> plaintiff's constitutional rights were not clearly
> established at the time of the violation, then
> qualified immunity should be granted.

*Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009).

Plaintiff did not cite any cases in which courts have concluded the threat to use a taser constitutes excessive force, which suggests Plaintiff's right to be free from excessive force in the form of a threat to use a taser is not and was not at the time clearly established. Plaintiff argues a reasonable officer would equate the threat to use a taser to the threat to use a firearm and, therefore, under the evidence viewed in Plaintiff's favor, a reasonable officer would have had fair notice that the threat to use a taser would constitute excessive force. At least one court, however, has concluded even the actual use of a taser is an intermediate level of force; *i.e.,* less force rather than equivalent to an officer's the use of a firearm. *See Sanders v. City of Fresno*, 551 F. Supp. 2d 1149, 1170 (E.D. Cal. 2008)("use of the Taser is a medium or intermediate level of force" that is less than a strike from a solid baton). Thus by analogy, a reasonable officer would not have had fair notice that the threat to use a taser is equivalent to the threat to use a firearm and might constitute excessive force in the circumstances Plaintiff alleges.

On this record, the Court concludes no reasonable

19 - OPINION AND ORDER

officer would have had fair notice that a threat to tase a pretrial detainee in these circumstances amounted to constitutionally excessive force in violation of Plaintiff's rights.   Thus, Sgt. Gorton is entitled to qualified immunity as to Plaintiff's First Claim for excessive force under § 1983.

Accordingly, the Court grants Defendant's Motion for Partial Summary Judgment as to Plaintiff's First Claim against Sgt. Gorton for excessive force on the basis of qualified immunity and denies Plaintiff's Cross-Motion for Partial Summary Judgment as to this claim against Sgt. Gorton.

## II. Plaintiff's Second Claim against Multnomah County for assault and battery.

Plaintiff brings his Second Claim against Multnomah County based on the actions of Sgt. Gorton when she allegedly committed assault and battery against Plaintiff by threatening to tase him.[2]  Plaintiff and Sgt. Gorton both move for summary judgment on this claim.

### A.   Standards.

Under Oregon law, civil assault occurs when (1) a person commits an act intending to cause a harmful or offensive

---

[2] Although Plaintiff brought this claim against Sgt. Gorton in his Complaint, Plaintiff conceded at oral argument that he could only bring this claim against Multnomah County pursuant to the Oregon Tort Claims Act (OTCA).  The parties, therefore, agreed to interpret Plaintiff's Second Claim as proceeding against Multnomah County and to treat the parties' respective Motions for Partial Summary Judgment as brought by and against Multnomah County.

contact with the person of another or to cause a belief by the
other person that a harmful or offensive contact may immediately
occur and (2) the other person reasonably believes such contact
is likely to occur immediately. *See generally Mays v. Huling
Buick Co.*, 246 Or. 203, 204 (1967). Oregon courts have defined
"battery" as an intentional tort that "is a 'voluntary act that
is intended to cause the resulting harmful or offensive
contact.'" *Ballard v. City of Albany*, 221 Or. App. 630, 640-41
(2008)(quoting *Walthers v. Gossett*, 148 Or. App. 548, 552,
(1997)). The Oregon Court of Appeals has held when the "physical
violence exerted by the officers against [the] plaintiff was no
more than necessary to accomplish the legitimate purpose of
fulfilling their duty," the force was reasonable and the officers
did not commit assault or battery. *Gigler v. City of Klamath
Falls*, 21 Or. App. 753, 763 (1975).

> **B.   Battery analysis**.

As noted, Sgt. Gorton was aware the taser was not
equipped with a cartridge at the time she pointed the taser light
at Plaintiff and, therefore, she knew she was unable to tase
Plaintiff. Thus, the undisputed facts demonstrate Sgt. Gorton
did not intend any harmful or offensive contact resulting from
her threat to use the taser. The Court, therefore, concludes as
a matter of law that Sgt. Gorton's threat to use the taser was
not a battery under Oregon law.

Accordingly, the Court grants Defendants' Motion for Partial Summary Judgment and denies Plaintiff's Motion for Partial Summary Judgment as to the battery portion of Plaintiff's Second Claim.

## C.   Assault analysis.

At oral argument, Defendant Multnomah County conceded for the purposes of its Motion that Sgt. Gorton assaulted Plaintiff under Oregon law when she threatened to tase Plaintiff because she intended to cause Plaintiff to believe a harmful or offensive contact would occur immediately, and, in fact, Plaintiff reasonably believed the harmful contact was likely to occur immediately. Multnomah County, however, asserts Sgt. Gorton's actions were privileged under Oregon Revised Statute § 161.205(2) and under *Gigler*. In response, Plaintiff contends § 161.205 applies only in the criminal context and does not provide a defense in the civil context. To support its assertion that § 161.205 is applicable in the context of a civil action, Multnomah County relies on *Hatfield v. Gracen*, 279 Or. 303 (1977), and *Gigler*.

Section 161.205(2) provides in pertinent part:

> The use of physical force upon another person that would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances:

> * * *

> (2) An authorized official of a jail, prison

or correctional facility may use physical
force when and to the extent that the
official reasonably believes it necessary to
maintain order and discipline or as is
authorized by law.

In *Hatfield*, the trial court relied on § 161.205(5)
when formulating a civil jury instruction.  On appeal, the Oregon
Supreme Court noted

[t]he instruction is taken from ORS 161.205(5).
However, this statute deals only with criminal
liability, and it is not directly applicable to
cases involving civil tort liability.  As a
general rule, the existence of a statutory defense
to a criminal prosecution does not necessarily
mean that civil liability can be avoided as well,
but no exception to this instruction was taken on
these grounds.

*Id*. at 307-08.  The Oregon Supreme Court, therefore, did not
explicitly rule on whether § 161.205 is ever applicable to a
civil matter.

In *Gigler*, the Oregon Court of Appeals cited Oregon
Revised Statutes §§ 161.235 and 161.245 in support of a defense
against the civil liability of an officer who uses force when
making an arrest or preventing an escape.  21 Or. App. at 763.
Unlike § 161.205, however, §§ 161.235 and 161.245 are not limited
on their face to criminal prosecutions.  *Gigler*, therefore, is
distinguishable from *Hatfield*.

As the court noted in *Hatfield*, under Oregon law the
existence of a statutory defense to a criminal prosecution does
not generally establish a defense to civil liability.  Indeed,

23 - OPINION AND ORDER

Multnomah County has not cited any cases in which an Oregon court has applied the defense in § 161.205 to a civil claim for assault.  Based on *Hatfield*, therefore, the Court concludes § 161.205 does not provide a defense to a civil-assault claim.

When the "physical violence exerted by the officers against [the] plaintiff was no more than necessary to accomplish the legitimate purpose of fulfilling their duty," Oregon courts have concluded the force was reasonable and the officers did not commit assault.  *Gigler*, 21 Or. App. at 763.  Here, however, the parties dispute whether Plaintiff failed to comply with the Deputies' commands at the time Sgt. Gorton threatened to tase him.  As noted, Sgt. Gorton testified Plaintiff continued to struggle, but Plaintiff testified he was totally compliant.  The Court, therefore, concludes a genuine issue of material fact exists as to the core facts from which a jury will determine whether Sgt. Gorton used reasonable force when she threatened to tase Plaintiff.

Accordingly, the Court denies both parties' Motions for Partial Summary Judgment as to the assault portion of Plaintiff's Second Claim.

## III. Plaintiff's Third Claim against Deputy Hathaway for malicious prosecution under § 1983.

Plaintiff alleges Deputy Hathaway initiated the criminal charge of Assaulting a Police Officer against Plaintiff with malice or without probable cause to "unjustly deprive [Plaintiff]

24 - OPINION AND ORDER

of liberty."

Defendants move for summary judgment as to Plaintiff's malicious-prosecution claims on the grounds that (1) a § 1983 claim is not available because "process is available within the state judicial systems to remedy such wrongs" and (2) there is not any evidence that Deputy Hathaway acted with malice or without probable cause.

**A.    Malicious prosecution standards under § 1983.**

In *Freeman v. City of Santa Ana*, the Ninth Circuit explained malicious prosecution within the context of § 1983 as follows:

> Malicious prosecution, by itself, does not constitute a due process violation; to prevail [the plaintiff] must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right. *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985)(*en banc*); *Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir. 1981).

68 F.3d 1180, 1189 (9th Cir. 1995).  In *Freeman*, the court concluded the plaintiff had not met her burden as to her malicious-prosecution claim because

> [a]lthough she alleges that the defendants acted with intent to deprive her of constitutional rights, [the plaintiff] is unable to show that she was prosecuted without probable cause.  [The plaintiff] merely lists the series of citations that were issued against her and notes that they were dismissed.  However, the mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause. She does not point to any evidence indicating that probable

25 - OPINION AND ORDER

cause was lacking.
*Id.* (citations omitted).

"Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002)).

Nevertheless, police officers are not generally "liable for damages suffered by the arrested person after a district attorney files charges unless the presumption of independent judgment by the district attorney is rebutted." *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007). "This presumption may be rebutted by showing, for example, that the prosecutor was pressured or caused by the investigating officers to act contrary to his independent judgment or that the investigating officers presented the prosecution with information known by them to be false." *Id.* (internal quotation omitted). For example, when the prosecutor relied solely on the police reports and the reports themselves contained "striking omissions" and "conflicting accounts of the incident," the Ninth Circuit held the jury could reasonably conclude the officers "procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney." *Borunda v. Richmond*, 885 F.2d

26 - OPINION AND ORDER

1384, 1390 (9th Cir. 1988).  Similarly, when the prosecutor had only the police report from which to make the charging decision, the police omitted crucial information, and an independent witness provided corroboration for the plaintiff's account, the court concluded there was sufficient evidence to overcome the presumption of prosecutorial immunity.  *Barlow v. Ground*, 943 F.2d 1132, 1137 (9th Cir. 1991).

   **B.    Availability of state remedy for malicious prosecution.**

        As noted, Defendants contend a claim for malicious prosecution under § 1983 is not available to Plaintiff because "process is available within the state judicial systems to remedy such wrongs."  To support their contention, Defendants rely on *Bretz v. Kelman*, 773 F.2d 1026 (9th Cir. 1985).  Although Plaintiff agrees the *Bretz* court held a claim for malicious prosecution under § 1983 is not generally available if there is an adequate remedy within the state system, Plaintiff argues this case comes within the exception set out in *Bretz* that allows a § 1983 malicious-prosecution claim when "a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights" and when "the alleged deprivation is inextricable from the alleged corruption of the process which the state ordinarily could provide."  *Id*. at 1031.

1.    **Standards.**

To prevail on his § 1983 malicious-prosecution claim, Plaintiff "'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" *Lacy v. County of Maricopa*, No. CV-06-2865-PHX-GMS, 2008 WL 5397585, at *10 (D. Ariz. Dec. 24, 2008)(quoting *Freeman*, 68 F.3d at 1189). Accordingly, "a plaintiff alleging malicious prosecution under section 1983 must . . . establish: (1) the elements of the state law tort; and (2) an intent to deprive the plaintiff of a constitutional right." *Pankey v. City of Concord*, No. C-06-03737 JCS, 2008 WL 793873, at *7 (N.D. Cal. Mar. 24, 2008)(citing *Madrigal v. Cal.*, No. CV F 06-0595 AWI SMS, 2006 WL 3834284, *3 (E.D. Cal. Dec. 26, 2006)).

2.    **Analysis.**

To establish malicious prosecution under Oregon law, a plaintiff must prove (1) the defendant initiated or procured a judicial proceeding against the plaintiff, (2) the proceeding terminated in the plaintiff's favor, (3) the defendant lacked probable cause to prosecute the action, (4) the defendant acted with malice or with the "primary purpose other than that of securing an adjudication of the claim by the defendant," and (5) damages. *Perry v. Rein,* 215 Or. App. 113, 125 (2007).

28 - OPINION AND ORDER

Because Plaintiff contends he did not strike Deputy Hathaway, Plaintiff argues his prosecution for Assaulting a Police Officer was with malice and without probable cause. Nonetheless, it is undisputed that Deputy Hathaway told Officer Hager at some point after the scuffle that Plaintiff hit him in the nose with his elbow, and Officer Hager subsequently cited Plaintiff for Assaulting a Police Officer on the basis of Deputy Hathaway's statement. Moreover, there is not any evidence that Deputy Hathaway requested or intended Officer Hager to cite Plaintiff for the crime of Assaulting a Police Officer and there also is not any evidence that Deputy Hathaway took any action to ensure the charge did not go forward.

As one court explained:

> Malicious prosecution actions are not limited to suits against prosecutors, but may also be "brought against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

> > Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination of the prosecutor, and, thus, precludes liability for those who participated in the investigation or filed a report that resulted in initiation of proceedings. However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on him, knowingly provided misinformation to the prosecutor, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings.

> *Id.* at 1067. . . .  While *Awabdy* spoke of bad
> faith conduct that is instrumental in "causing the
> initiation" of legal proceedings, *id.*, the
> principle applies with equal force to one who
> engages in reckless conduct that is actively
> instrumental in causing legal proceedings to be
> improperly maintained even if that conduct played
> no role in the initiation of the legal pro-
> ceedings.  Should a jury find that [the medical
> examiner's] statements to [the prosecutor] were
> incorrect and were made with reckless indifference
> to the truth, the presumption of prosecutorial
> independence in maintaining and prosecuting
> homicide charges will be successfully rebutted.

*Lacy*, 2008 WL 5397585, at *10.  A plaintiff who satisfies this

standard also must

> present evidence sufficient for a reasonable jury
> to conclude [the defendant] acted . . . with the
> intent to deprive [the plaintiff] of a
> constitutional right.  Thus, the relevant inquiry
> is whether the facts in the record, when viewed in
> the light most favorable to [the plaintiff],
> permit the inference that [the defendant] acted
> with the intent to deprive [the plaintiff] of
> [his] constitutional rights.

*Id.*

Here, as noted, Deputy Hathaway alleged Plaintiff

hit him in the nose when, viewing the evidence in the light most

favorable to Plaintiff, he knew that was untrue.  Nevertheless,

he allowed Plaintiff's prosecution for that incident to proceed

through grand jury.  A reasonable juror could find Deputy

Hathaway knew Plaintiff did not strike him, and, therefore,

Deputy Hathaway acted without probable cause or with malice when

he allowed the legal proceeding against Plaintiff to go forward.

It follows that a reasonable juror also could infer from these

30 - OPINION AND ORDER

assumed facts that Deputy Hathaway acted with the intent to
deprive Plaintiff of his right to liberty under the due-process
clause of the United States Constitution.  Thus, on this record
viewed in Plaintiff's favor, Deputy Hathaway is not entitled to
summary judgment on this claim because a genuine issue of
material fact exists as to whether Deputy Hathaway acted with
malice or without probable cause and with the intent to deprive
Plaintiff of his right to liberty under the due-process clause of
the United States Constitution.

        Accordingly, the Court denies the parties' Motions for
Partial Summary Judgment as to that portion of Plaintiff's Third
Claim against Deputy Hathaway for malicious prosecution under
§ 1983.

## IV.  Malicious prosecution under state law.

    As noted, Plaintiff also intends to state a claim against
Multnomah County for malicious prosecution under state law based
on the alleged actions of Deputy Hathaway.

    Defendants move for summary judgment as to Plaintiff's
state-law claim against Multnomah County for malicious
prosecution on the grounds that (1) Plaintiff did not incur any
economic damages and (2) Plaintiff has not established Deputy
Hathaway acted with malice or without probable cause.

    As noted, to establish malicious prosecution under Oregon
law, a plaintiff must prove (1) the defendant initiated or

31 - OPINION AND ORDER

procured a judicial proceeding against the plaintiff, (2) the
proceeding terminated in the plaintiff's favor, (3) the defendant
lacked probable cause to prosecute the action, (4) the defendant
acted with malice or with the "primary purpose other than that of
securing an adjudication of the claim by the defendant," and
(5) damages. *Perry,* 215 Or. App. at 125.

Oregon Revised Statute § 30.650 provides "[n]oneconomic
damages, as defined in ORS 31.710, may not be awarded to an
inmate in an action against a public body unless the inmate has
established that the inmate suffered economic damages, as defined
in ORS 31.710." Section 31.710(2)(a) defines economic damages as

> objectively verifiable monetary losses including
> but not limited to reasonable charges necessarily
> incurred for medical, hospital, nursing and
> rehabilitative services and other health care
> services, burial and memorial expenses, loss of
> income and past and future impairment of earning
> capacity, reasonable and necessary expenses
> incurred for substitute domestic services,
> recurring loss to an estate, damage to reputation
> that is economically verifiable, reasonable and
> necessarily incurred costs due to loss of use of
> property and reasonable costs incurred for repair
> or for replacement of damaged property, whichever
> is less.

The Court notes Plaintiff alleges in his Complaint that he
suffered only noneconomic damages as a result of "malicious
prosecution," but Plaintiff asserts in his Response to
Defendants' Motion for the first time that he suffered economic
damages in the form of a $5.00 fine imposed by the hearings
officer as a sanction for the offenses of assaulting MCDC staff,

32 - OPINION AND ORDER

failure to follow orders, and disrespectful behavior.  Plaintiff
also contends § 30.650 violates Article 1, §§ 10 and 17, of the
Oregon Constitution and the Equal Protection Clause of the United
States Constitution.

    **A.  Fine**.

        Although Plaintiff contends he suffered economic
damages when the hearings officer assessed a $5 fine against him,
the Court notes Plaintiff has not established any connection
between assessment of the fine by the hearings officer and the
state-court action for Assaulting a Police Officer other than the
fact that Plaintiff's alleged assault on Deputy Hathaway provided
the underlying basis for both actions.  Moreover, Plaintiff does
not cite any cases to support his position that MCDC's
disciplinary proceeding is a "judicial proceeding" for purposes
of a malicious prosecution claim.  In fact, Plaintiff conceded at
oral argument that he has "not seen" malicious prosecution "lie
for the acts of a hearings officer."  In any event, it is
undisputed that the disciplinary procedure did not terminate in
Plaintiff's favor.

        On this record, the Court concludes as a matter of law
that Plaintiff did not suffer any economic damages as a result of
the alleged malicious prosecution.  Thus, pursuant to Oregon
Revised Statute § 30.650 and *Perry*, Plaintiff is not able to
establish one of the necessary elements for a malicious-

33 - OPINION AND ORDER

prosecution claim under state law.

**B.    Plaintiff has not established § 30.650 denies him a remedy in violation of Article 1, § 10 of the Oregon Constitution.**

Plaintiff contends even if § 30.650 prohibits him from bringing his state-law malicious-prosecution claim, the Court should not apply that statute because § 30.650 in combination with the OTCA, Oregon Revised Statute § 30.265(1), violates Article I, § 10, of the Oregon Constitution.

Article 1, § 10, of the Oregon Constitution provides in pertinent part that "every man shall have a remedy by due course of law for injury done him in his person, property, or reputation." In *Smothers v. Gresham Transfer, Inc.*, the Oregon Supreme Court analyzed § 10 and concluded:

> [T]he remedy clause of Article I, section 10, protects rights respecting person, property, and reputation.
>
> * * *
>
> The word "remedy" refers both to a remedial process for seeking redress for injury and to what is required to restore a right that has been injured. Injury, in turn, is a wrong or harm for which a cause of action existed when the drafters wrote the Oregon Constitution in 1857. A common-law cause of action is a constitutionally adequate remedy for seeking redress for injury to protected rights. However, the remedy clause does not freeze in place common-law causes of action that existed when the drafters wrote the Oregon Constitution in 1857. The legislature may abolish a common-law cause of action, so long as it provides a substitute remedial process in the event of injury to the absolute rights that the remedy clause protects. At a minimum, to be

34 - OPINION AND ORDER

> remedy by due course of law, the statutory remedy
> must be available for the same wrongs or harms for
> which the common-law cause of action existed in
> 1857.  That is, if the common law provided a cause
> of action for an injury to one of the rights that
> the remedy clause protects, then a legislatively
> substituted remedial process must be available for
> that injury.
>
> [I]n analyzing a claim under the remedy clause,
> the first question is whether the plaintiff has
> alleged an injury to one of the absolute rights
> that Article I, section 10 protects.  Stated
> differently, when the drafters wrote the Oregon
> Constitution in 1857, did the common law of Oregon
> recognize a cause of action for the alleged
> injury?  If the answer to that question is yes,
> and if the legislature has abolished the
> common-law cause of action for injury to rights
> that are protected by the remedy clause, then the
> second question is whether it has provided a
> constitutionally adequate substitute remedy for
> the common-law cause of action for that injury.

332 Or. 83, 124 (2001).

Similarly, in *Voth v. Oregon*, an inmate brought claims for
negligence and intentional infliction of emotional distress
claims and sought noneconomic damages against the State of
Oregon.  190 Or. App. 154, 156-57 (2003).  The trial court
granted summary judgment to defendant State of Oregon and
dismissed the plaintiff's negligence and intentional infliction
of emotional distress claims for noneconomic damages on the
ground that the plaintiff could not recover noneconomic damages
in the absence of establishing economic damages as required by
§ 30.650.  *Id*. at 156.  The plaintiff appealed on the ground that
§ 30.650 deprived him of a remedy in violation of Article I,

35 - OPINION AND ORDER

§ 10, of the Oregon Constitution.  The Oregon Court of Appeals concluded:

> [Section 30.650] does not prevent an inmate from having the *capacity* to bring a claim against a public body for negligence or intentional infliction of emotional distress; rather, it imposes a condition on the recovery of noneconomic damages in those kinds of actions.  In fact, ORS 30.650 recognizes implicitly the capacity of an inmate to sue for both economic and noneconomic damages.  The statute merely operates to bar the *award* of noneconomic damages unless the inmate also establishes that he or she suffered economic damages.

*Id.* at 159-60 (emphasis in original).  As to the plaintiff's assertion that Article I, § 10, "guarantees plaintiff a remedy for his noneconomic damages that the legislature could not take away form him," the court explained:

> In order for plaintiff to succeed, he must demonstrate that he could have otherwise brought an action for negligence and intentional infliction of emotional distress against the State of Oregon at the time of adoption of the constitution.  Under *Smothers*, the first inquiry is whether, at common law, the state was immune from such claims because of the doctrine of sovereign immunity.  In *Hale v. Port of Portland*, 308 Or. 508, 512-17 (1989), the court . . . explained that sovereign immunity from legal action "was universally accepted" in the American states, *id.* at 513, 783 P.2d 506; that the Oregon Territory did not modify the common law rule, *id.* at 514, 783 P.2d 506; and that it "was a part of the state's law at the time of statehood."  *Id.* Those conclusions make it clear that plaintiff could not have sued the State of Oregon at common law for negligence or intentional infliction of emotional distress because of the doctrine of sovereign immunity.  Therefore, Article I, section 10, provides plaintiff with no relief because his action was barred at common law and he would have

> had no remedy due to the state's sovereign
> immunity.

*Id*. at 160-61.

Here Plaintiff does not seek to bring an action against the State, and Multnomah County is not immune from suit under the doctrine of sovereign immunity.  Nevertheless, Plaintiff did not cite any authority for his argument that the common law of Oregon recognized a cause of action for malicious prosecution at the time the drafters wrote the Oregon Constitution.  Although the Court granted Plaintiff leave at oral argument to file additional authority to support this proposition, Plaintiff did not do so. Thus, the Court concludes on this record that Plaintiff has not alleged "an injury to one of the absolute rights that Article I, section 10 protects," and, therefore, pursuant to *Voth*, § 30.650 does not violate Plaintiff's right to a remedy under Article I, § 10, of the Oregon Constitution.  The Court also notes Oregon courts have concluded the OTCA does not violate Article 1, § 10, of the Oregon constitution because the OTCA makes available a substitute remedial process for a plaintiff's injuries.  *See, e.g., Jensen v. Whitlow*, 334 Or. 412 420 (2002); *Clarke v. Or. Health Sciences Univ.*, 206 Or. App. 610 (2006).  Accordingly, operation of the OTCA alone does not deprive Plaintiff of his rights under Article 1, § 10, of the Oregon Constitution.

In any event, even if Plaintiff had established he suffered an injury within the meaning of the remedy clause of

37 - OPINION AND ORDER

Article 1, § 10, the Oregon Court of Appeals held in *Voth* that § 30.650 is an adequate substitute remedy to a common-law cause of action because it does not "prevent an inmate from having the capacity to bring a claim against a public body for negligence or intentional infliction of emotional distress; rather, it imposes a condition on the recovery of noneconomic damages in those kinds of actions." *Voth*, at 159-60. This Court is bound by the Oregon Court of appeals analysis in these circumstances. *See Ryman v. Sears, Roebuck and Co.*, 505 F.3d 993, 994 (9th Cir. 2007)(when "'there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'") (quoting *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001)).

Based on *Smothers, Voth,* and *Jensen,* the Court concludes even though §§ 30.265(1) and 30.650 act in combination to restrict the party against whom an inmate can bring his claim and the kind of damages to which the inmate is entitled, these statutes do not prevent an inmate from bringing a claim against a public body. Accordingly, the Court concludes §§ 30.265(1) and 30.650 in combination do not deprive Plaintiff of a remedy in violation of Article 1, § 10, of the Oregon Constitution.

**C.  Plaintiff has not established § 30.650 denies him a remedy in violation of Article 1, § 17, of the Oregon Constitution.**

Plaintiff also asserts § 30.650 denies him the right to trial by a jury on his claim for malicious prosecution in violation of Article 1, § 17, of the Oregon Constitution.

In *Voth* the Oregon Court of Appeals evaluated the plaintiff's claims in light of Article I, § 17, of the Oregon Constitution and explained:

> Article I, section 17, provides that "[i]n all civil cases the right of Trial by Jury shall remain inviolate."  In *Jensen v. Whitlow*, 334 Or. 412, 422 (2002), the court explained:
>
> > "Article I, section 17, is not a source of law that creates or retains a substantive claim or a theory of recovery in favor of any party.  Instead, as this court previously has held, Article I, section 17, simply 'guarantees a jury trial in civil actions for which the common law provided a jury trial when the Oregon Constitution was adopted in 1857[.]  'The right to pursue a 'civil action,' if it exists, must arise from some source other than Article I, section 17, because, that provision 'is not an independent guarantee of the existence of a cognizable claim.'"
>
> (Brackets in original; citations omitted.)  As we hold above, the common law did not provide a jury trial for negligence and intentional infliction of emotional distress actions against the state in 1857.

190 Or. App. at 161.

As noted, Plaintiff has not established that a claim for malicious prosecution was recognized or that a jury trial was

allowed in 1857.  Accordingly, the Court concludes Plaintiff has
not established § 30.650 denies Plaintiff his constitutional
right to trial by jury on his state-law malicious-prosecution
claim in violation of Article I, § 17, of the Oregon
Constitution.

In summary, Plaintiff has not shown he suffered any economic
damages as a result of the alleged malicious prosecution.
Plaintiff also has not established § 30.650 violates his rights
under Article I, §§ 10 and 17, of the Oregon Constitution.
Accordingly, the Court grants Defendants' Motion for Partial
Summary Judgment and denies Plaintiff's Motion for Partial
Summary Judgment as to Plaintiff's Third Claim against Multnomah
County for malicious prosecution under state law.


<u>CONCLUSION</u>

For these reasons, the Court **GRANTS in part** and **DENIES in
part** Defendants' Motion (#37) for Partial Summary Judgment as
follows:

1.    The Court **GRANTS** Defendants' Motion for Partial Summary
      Judgment as to Plaintiff's First Claim against
      Sgt. Gorton for excessive force;

2.    The Court **GRANTS** Defendants' Motion for Partial Summary
      Judgment as to that portion of Plaintiff's Second Claim
      for battery related to acts of Sgt. Gorton;

      3.    The Court **DENIES** Defendants' Motion for Partial Summary Judgment as to that portion of Plaintiff's Second Claim for assault related to acts of Sgt. Gorton;

      4.    The Court **DENIES** Defendants' Motion for Partial Summary Judgment as to Plaintiff's Third Claim against Deputy Hathaway for malicious prosecution under § 1983; and

      5.    The Court **GRANTS** Defendants' Motion for Partial Summary Judgment as to Plaintiff's Third Claim against Multnomah County for malicious prosecution under state law.

The Court also **DENIES** Plaintiff's Cross-Motion (#42) for Partial Summary Judgment in its entirety.

IT IS SO ORDERED.

DATED this 15th day of April, 2009.


                  /s/ Anna J. Brown

                  _____
                  ANNA J. BROWN
                  United States District Judge