IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL EVANS,                          3:07-CV-01532-BR

             Plaintiff,                 OPINION AND ORDER

     v.

MULTNOMAH COUNTY, DEPUTY
RICHARD HATHAWAY, DEPUTY
ROBERT GRIFFITH, OFFICER RYAN
ALBERTSON, and SERGEANT
CATHLINE GORTON,

             Defendants.


BENJAMIN WRIGHT HAILE
Portland Law Collective, LLP
1130 S.W. Morrison Street, Suite 407
Portland, OR 97205
(503) 228-1889

             Attorneys for Plaintiff


1 - OPINION AND ORDER

**JENNY MORK**
Multnomah County Attorney
**CARLOS J. CALANDRIELLO**
Assistant Multnomah County Attorney
501 S.E. Hawthorne, Suite 500
Portland, OR  97214
(503) 988-3138

> Attorneys for Defendants Multnomah County, Deputy
> Richard Hathaway, Deputy Robert Griffith, and Sergeant
> Cathline Gorton

**JAMES H. VAN DYKE**
Portland City Attorney
**DAVID A. LANDRUM**
Deputy Portland City Attorney
1221 S.W. Fourth Avenue, Room 430
Portland, OR  97204
(503) 823-4047

> Attorneys for Defendant Officer Ryan Albertson

**BROWN, Judge.**

This matter comes before the Court on Defendant Multnomah County's Second Motion (#180) for Summary Judgment.  For the reasons that follow, the Court **GRANTS** Defendant's Second Motion.


## BACKGROUND

The parties are familiar with the facts of this case from the Court's prior Opinions and the trial in this matter. Accordingly, the Court recites only a brief history of the case and the facts related to the sole remaining claim in this matter.

On September 11, 2006, Plaintiff was booked into Multnomah County Detention Center (MCDC).  When Plaintiff arrived for

2 - OPINION AND ORDER

booking, he was contacted by Deputy Richard Hathaway and Deputy Robert Griffith, who are Deputy Sheriffs for Multnomah County. Deputies Hathaway and Griffith assisted in the booking process. After a series of events, Plaintiff and the deputies began to struggle.  Ultimately, Deputies Griffith and Hathaway grabbed Plaintiff and pulled him to the ground.  Deputy Griffith hit Plaintiff twice in the side as he was bringing Plaintiff to the ground.  Deputy Hathaway gave Plaintiff several "focused blows" in an effort to get him to comply with the deputies' orders to lay on his stomach and put his hands behind him.  According to Defendants, Plaintiff continued to struggle.

Eventually Sergeant Cathline Gorton, who was stationed at her desk away from the booking area, noticed a commotion on the television monitors at her desk and saw staff wrestling with a combative inmate on the floor.  She went to the booking area and saw Deputies Hathaway and Griffith and a Portland police officer "wrestling with a guy on the floor and telling him to give them their [sic] hands."  The only statements that Sgt. Gorton recalled Plaintiff making during the struggle were "Fuck you," "I own you," and "the F word . . . frequently."  Sgt. Gordon instructed Plaintiff to "stop resisting and give us his hands." Sgt. Gorton directed another deputy to retrieve a taser from the charging cradle because Plaintiff continued to be noncompliant. Sgt. Gordon knew the taser did not have the cartridge in it, and,

3 - OPINION AND ORDER

therefore, it could not be used to shoot taser probes.
Nevertheless, Sgt. Gordon took the taser over to Plaintiff; bent
at the waist; and informed Plaintiff that she was going to use
the taser if Plaintiff did not stop resisting.  Sgt. Gorton
testified at trial that Plaintiff did not listen to her "at all."
Plaintiff testified he blacked out before Sgt. Gorton informed
him that she was going to use the taser if he did not cooperate.
Plaintiff testified he "came to with [Stg. Gorton] talking" or
"yelling something at [him]."  Sgt. Gorton testified she
activated the light on the taser, dropped to one knee, moved the
taser light across Plaintiff's face, and shined the taser light
in Plaintiff's eye stating "You see that?  That's a taser.  If
you fail to do anything that anybody asks you to do from this
point forward, I will tase you"; *i.e.*, her intent was to "get his
attention" and to lead him to believe she would use the taser "if
necessary" even though she knew the taser could not be fired.
Plaintiff testified Sgt. Gorton "moved the taser around quite a
bit," at times pointing the light at his nose, his eyes, and his
forehead after Plaintiff "came to."  Plaintiff then stopped
resisting, and he was escorted to a separation cell.

On September 12, 2007, Plaintiff filed a Complaint in
Multnomah County Circuit Court against Multnomah County, Sheriff
Bernie Guisto, Deputy Hathaway, Deputy Griffith, Portland Police
Officer Ryan Albertson, Sgt. Gorton, and John Does 1-3 in which

Plaintiff alleged claims for (1) excessive force in violation of his rights under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, (2) assault and battery under state law, (3) malicious prosecution under § 1983, and (4) failure to train and to supervise law-enforcement personnel.

On October 12, 2007, Defendants removed the matter to this Court.

On October 1, 2008, Deputy Hathaway and Sgt. Gorton filed a Motion for Partial Summary Judgment in which Sgt. Gorton moved for summary judgment as to Plaintiff's First and Second Claims for excessive force and assault and battery and Deputy Hathaway moved for summary judgment as to Plaintiff's Third Claim for malicious prosecution.  On that same day Plaintiff filed a Motion for Partial Summary Judgment against Sgt. Gorton, Deputy Griffith, and Deputy Hathaway as to Plaintiff's First Claim for excessive force, against Multnomah County as to Plaintiff's Second and Third Claims for assault and battery and malicious prosecution under state law, and against Deputy Hathaway as to Plaintiff's Third Claim for malicious prosecution under § 1983.

On January 30, 2009, the Court held a hearing on the parties' Motions.  At the hearing Plaintiff's counsel clarified Plaintiff's Third Claim for malicious prosecution was brought both under § 1983 and state law and Plaintiff's Fourth Claim was

a *Monell*[1] claim against the public-body Defendants for liability as to Plaintiff's § 1983 excessive-force claims.  Finally, Plaintiff's counsel confirmed all state-law claims were brought only against the public-body Defendants and all § 1983 claims were brought against the individual Defendants in their individual capacities.  Because the Court found there were disputes of material fact concerning the physical contact that Deputies Hathaway and Griffith had with Plaintiff during the booking process, the Court (1) denied Plaintiff's Motion for Partial Summary Judgment as to Plaintiff's First Claim against Deputies Hathaway and Griffith for excessive force under § 1983 and (2) denied Plaintiff's Motion for Partial Summary Judgment as to Plaintiff's Second Claim for assault and battery against Multnomah County arising from the actions of Deputies Hathaway and Griffith.  The Court took the remaining issues under advisement.

On April 15, 2009, the Court issued an Opinion and Order in which it denied Plaintiff's Cross-Motion for Partial Summary Judgment and granted in part and denied in part Defendants' Motion as follows:

1.   The Court granted Defendants' Motion as to Plaintiff's First Claim against Sgt. Gorton for excessive force, as to that portion of Plaintiff's Second Claim for battery

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

6 - OPINION AND ORDER

related to the acts of Sgt. Gorton, and as to Plaintiff's Third Claim against Multnomah County for malicious prosecution under state law.

2.  The Court denied Defendants' Motion as to that portion of Plaintiff's Second Claim for assault related to acts of Sgt. Gorton and as to Plaintiff's Third Claim against Deputy Hathaway for malicious prosecution under § 1983.

With respect to Plaintiff's battery claim related to the acts of Sgt. Gorton, the Court concluded:

> As noted, Sgt. Gorton was aware the taser was not equipped with a cartridge at the time she pointed the taser light at Plaintiff and, therefore, she knew she was unable to tase Plaintiff. Thus, the undisputed facts demonstrate Sgt. Gorton did not intend any harmful or offensive contact resulting from her threat to use the taser. The Court, therefore, concludes as a matter of law that Sgt. Gorton's threat to use the taser was not a battery under Oregon law.

On December 9, 2009, the parties went to trial on Plaintiff's remaining claims.

On December 15, 2009, the jury returned a Verdict in which it found

(1) Plaintiff established:

(a)  Defendant Hathaway used excessive force against him in violation of his Fourth Amendment rights;

(b)  Defendant Richard Hathaway and/or Defendant Robert Griffith committed a battery against him in violation of Oregon law for which Defendant Multnomah County is liable and the battery was not

justified under Oregon law; and

    (c)  Defendant Ryan Albertson committed a battery against him in violation of Oregon law for which Defendant City of Portland is liable, but Alberston established that the battery was justified under Oregon law.

(2)  Plaintiff did not establish:

    (a)  Defendant Griffith violated his Fourth Amendment rights;

    (b)  Defendant Albertson used excessive force against him in violation of his Fourth Amendment rights;

    (c)  Defendant Catherine M. Gorton committed assault against him in violation of Oregon law for which Defendant Multnomah County is liable; or

    (d)  Defendant Hathaway violated Plaintiff's due process rights under the Fourteenth Amendment.

The jury declined to award punitive damages on any claim. The jury awarded Plaintiff compensatory damages in the amount of $250 against Defendant Hathaway on the Fourth Amendment claim and $250 against Defendant Multnomah County as to the battery claim.

Plaintiff appealed on five grounds.

On September 14, 2012, the Ninth Circuit issued a Mandate affirming this Court's decision as to all but a portion of Plaintiff's battery claim and remanded this matter for the Court to address the following limited question:

> The district court ruled on the question whether Gorton intended to tase Evans but we can find no ruling addressing whether shining the laser in his eye was a battery. We therefore reverse and remand the order dismissing the battery claim arising from Gorton's actions so the district court can rule on this theory.

8 - OPINION AND ORDER

On December 14, 2013, Defendant Multnomah County filed a Second Motion for Summary Judgment as to whether shining the laser in Plaintiff's eye was a battery by Sgt. Gorton.  The Court took Defendant's Motion under advisement on February 15, 2013.

## **STANDARDS**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a genuine dispute as to a material fact.  *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and point to "specific facts demon-strating the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) "This burden is not a light one. . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  *Id.* (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby,*

9 - OPINION AND ORDER

*Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

"A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."  *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009)(citation omitted).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id.*

## DISCUSSION

As noted, the Ninth Circuit remanded this matter for resolution of the limited question whether shining the laser in Plaintiff's eye was a battery.

## I.    Standard

Oregon courts have defined "battery" as an intentional tort that "is a 'voluntary act that is intended to cause the resulting harmful or offensive contact.'" *Ballard v. City of Albany*, 221 Or. App. 630, 640-41 (2008)(quoting *Walthers v. Gossett*, 148 Or. App. 548, 552, (1997)).  The Oregon Court of Appeals has held when the "physical violence exerted by the officers against [the] plaintiff was no more than necessary to accomplish the legitimate purpose of fulfilling their duty," the force was reasonable and the officers did not commit assault or battery. *Gigler v. City of Klamath Falls*, 21 Or. App. 753, 763 (1975).

The Oregon Supreme Court has explained with respect to battery that

> an intentional act causing unpermitted physical
> contact with the person of another does not
> necessarily amount to . . . battery.  We must
> distinguish between an intent to do an act which
> may be wilful or wanton and which may result in
> contact, on the one hand, and an act involving an
> intent to cause harmful or offensive contact with
> the person, on the other. . . .  [B]attery
> involves more than an intentional act.  There must
> be the intent to injure.  However, the authorities
> plainly indicate that the word "injure" refers to
> legal injury, a violation of a protected right of
> the one assaulted.  It does not necessarily mean
> bodily and physical injury.  An offensive

11 - OPINION AND ORDER

> unpermitted touch may be a battery though no
> physical damage results.

*Cook v. Kinzua Pine Mills Co.*, 207 Or. 34, 4849 (1956).  The

court cautioned "courts have repeatedly fallen into error by

referring to intentional or wilful acts without distinguishing

between an intent to be reckless and an intent to hit the

plaintiff."  *Id.* at 49.  The court identified four types of

wrongful conduct:  (1) simple negligence, (2) gross negligence,

(3) negligence committed in a wanton manner, and (4) battery.

*Id.* at 58.  The court noted wanton conduct is defined as

> doing . . . an intentional act of an unreasonable
> character in disregard of a risk known to the
> actor, or so obvious that he must be taken to have
> been aware of it and so great as to make it highly
> probable that harm would follow, usually
> accompanied by a conscious indifference in
> consequences.

*Id.* at 58-59.  Battery, on the other hand, requires "an actual

intent not only to do an act but to cause personal injury."  *Id.*

In addition, "Oregon law cautions that the court should only

infer . . . subjective intent to cause harm or injury as a matter

of law when such subjective intent is the only reasonable

inference that may be drawn from the insured's conduct."  *Gakk*

*Inc. v. Acceptance Cas. Ins. Co.*, No. CV 09-6282-MO, 2010 WL

3259905, at *2 (D. Or. Aug. 16, 2010).  *See also Redman v.*

*Morehead*, No. 3:12-CV-11-AC, 2012 WL 1253108, at *3 (D. Or.

Apr. 13, 2012)(same).

12 - OPINION AND ORDER

## II.  Analysis

Plaintiff does not allege in his Complaint that Sgt. Gorton acted with the intent to cause Plaintiff harm, and, the Court agrees with Defendant that the evidence at trial failed to establish that Sgt. Gorton was acting with the requisite intent under Oregon law "to cause personal injury."  Defendant contends there is not any evidence that Sgt. Gorton used the light on the taser for any purpose other than to get Plaintiff's attention in an attempt to end the struggle between Plaintiff and various law-enforcement personnel.  Sgt. Gorton testified at trial that Plaintiff did not listen to her "at all" and that she failed to get any response from him.  At that point, Sgt. Gorton activated the light on the taser, dropped to one knee, moved the taser light across Plaintiff's face, and shined the taser light in Plaintiff's eye stating "You see that?  That's a taser.  If you fail to do anything that anybody asks you to do from this point forward, I will tase you"; *i.e.*, her intent was to "get his attention" and to lead him to believe she would use the taser "if necessary" even though she knew she could not discharge the taser because the cartridge was missing.  Decl. of Carlos Calandriello, Ex. 4 at 16.  The undisputed trial evidence is that Sgt. Gorton did not have her finger on the trigger of the taser at any time and, in fact, she did not want to use the taser.  Calandriello Decl., Ex. 4 at 17.

Thus, Defendant asserts the only permissible conclusion to
draw from the evidence at trial is that Sgt. Gorton did not have
the requisite intent to harm Plaintiff with the taser light and
that she was merely trying to get his attention.  Defendant also
contends the testimony at trial, the jury instructions, and the
jury's finding that Defendant failed to prove that Sgt. Gorton
assaulted Plaintiff preclude Plaintiff's claim for battery.
Specifically, Defendant notes the Court gave the following
instruction with respect to Plaintiff's claim for assault:

> In order to prove Defendant Gorton committed an
> assault against Plaintiff in violation of Oregon
> law, for which Defendant Multnomah County would be
> liable under Claim Two, Plaintiff must prove each
> of the following elements by a preponderance of
> the evidence:
>
> 1.    Defendant Gorton committed an act
>       intending to cause the Plaintiff to
>       believe a harmful or offensive contact
>       was about to occur; and
>
> 2.    The Plaintiff reasonably believed such a
>       contact was about to occur.

As noted, the jury returned a Verdict in favor of Multnomah
County as to Plaintiff's assault claim based on the actions of
Sgt. Gorton.  Although Defendant argues the Court should draw
conclusions as to what the jury must have found to return the
defense Verdict on the assault claim and to apply those
conclusions to the remanded battery issue, the Court declines to
speculate as to the jury's Verdict on a separate claim that is
now concluded as a matter of law and, in any event, the Court

14 - OPINION AND ORDER

concludes Defendant is entitled to summary judgment on the
battery claim without reference to the assault Verdict.

Plaintiff, in turn, contends a reasonable jury could find
Sgt. Gorton intended the shining of the taser light in
Plaintiff's eyes to be offensive.  To support his position,
Plaintiff relies on *Tu v. Kaiser Foundation Health Plan of
Northwest*, No. 07-968-KI, 2008 WL 3871742 (D. Or. Aug. 19, 2008).
In *Tu* the plaintiff filed an action against the defendant for,
among other things, assault and battery.  At summary judgment the
plaintiff testified in her affidavit that a coworker, Denise
French, grabbed a "red-hot waxiron" spoon and waved it around the
plaintiff's chest and face.  The plaintiff was frightened because
French appeared upset and pinned the plaintiff against the work
bench and the plaintiff could not get away from her.  French was
much bigger than the plaintiff and said to the plaintiff, "Are
you scared? Are you scared? You should be.  You chicken shit.
I could burn you right now."  2008 WL 3871742, at *6.  French
continued this behavior for five to ten minutes.  The plaintiff
begged French to stop and to put the tool down.  French then
pointed the hot waxiron toward her own stomach and continued the
taunting.  Tonya Swindell, a former supervisor in the department,
twice told French to put the tool down before French finally
stopped and walked away.  *Id.*  The court denied the defendant's
motion for summary judgment as to the plaintiff's battery claim

15 - OPINION AND ORDER

and noted "[t]his version of the events is easily adequate for a jury to find that French intended to injure [the plaintiff] in the sense of invading her personal space and bodily integrity, if not to injure [the plaintiff] physically." *Id.*, at *21.

Based on *Tu*, Plaintiff asserts it is unnecessary for a defendant to intend to do actual physical harm, but instead a defendant must only have the intent to offend. The Court notes, however, that the Oregon Supreme Court made plain in *Cook v. Kinzua Pine Mills* that battery requires "intent to cause physical injury" even if no actual physical injury occurs.

Nevertheless, Plaintiff contends Sgt. Gorton's warning could not have been ineffective and "she could not have believed that she did not already have [Plaintiff's] attention" because Plaintiff was compliant and even told her that he was compliant. In other words, Plaintiff finds significance in a factual contention that Sgt. Gorton may have continued to flash the light after Plaintiff allegedly complied with her commands. As Defendant points out, however, Plaintiff testified at trial that he blacked out and "came to with someone yelling something at me at first. And then I saw a red light, a bright red light in my left eye." Calandriello Decl., Ex. 9 at 2. Defense counsel asked Plaintiff whether Plaintiff said anything to Sgt. Gorton before she shined the light in his eye, and Plaintiff responded: "Before she shined - no, I was - like I said, I was out of it at

that point.  I came to with her talking and then shining the
laser in my face, right in my eye." Calandriello Decl., Ex. 9 at
3.  According to Plaintiff's testimony, therefore, he did not
respond to or perceive Sgt. Gorton's initial warning about the
taser because he was blacked out at that point.  Thus,
Sgt. Gorton's trial testimony that she perceived her warning as
ineffective is not contradicted by Defendant's testimony or any
other evidence.

     Plaintiff also asserts a disputed fact exists as to whether
Sgt. Gorton's intent was to get Plaintiff's attention rather than
to cause harmful or offensive contact by shining the light at
Plaintiff based on the fact that, according to Plaintiff,
Sgt. Gorton shined the light in Plaintiff's eye for 15 seconds.
As Defendant notes, however, Plaintiff testified at least three
times at trial that the light was not shined in his eye for 15
seconds, that Sgt. Gorton "moved the taser around quite a bit,"
and that at times the light was pointed at his nose and at other
times at his forehead.  Calandriello Decl., Ex. 9 at 7-8.
Plaintiff's testimony is consistent with Sgt. Gorton's testimony
that she "shined the laser light across Mr. Evans' face and in
his eye, to quickly get his attention so he would listen to her
commands."

     In any event, the Court concludes none of Plaintiff's
arguments point to an evidentiary record from which rational

17 - OPINION AND ORDER

jurors could have found Sgt. Gorton intended to cause personal injury to Plaintiff.  The Court is not aware of any Oregon case that holds the shining of a taser light into a person's eye in the manner described here is the type of tortious "personal injury" for which a battery claim may lie under Oregon law.

On this record, therefore, the Court concludes Plaintiff has not established a genuine dispute of material fact exists as to Sgt. Gorton's intent to cause personal injury when she shined the taser light in Plaintiff's eyes to get his attention. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's battery claim.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant Multnomah County's Second Motion (#180) for Summary Judgment and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 17th day of April, 2013.


_____
ANNA J. BROWN
United States District Judge


18 - OPINION AND ORDER